UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER SHAPARD,

                                Plaintiff,

        -v-                                             DECISION AND ORDER

JOHN ATTEA, et al.,                                08-CV-6146 CJS

                                Defendants.

_____

APPEARANCES

For Plaintiff:                  Christopher Shapard, Pro Se
                                    92-A-4434
                                    Auburn Correctional Facility
                                    Box 618
                                    Auburn, New York 13021

For Defendants:             Gary M. Levine, Esq.
                                    Assistant Attorney General of Counsel
                                    New York State Office of the Attorney General
                                    144 Exchange Boulevard, Suite 200
                                    Rochester, New York 14614

INTRODUCTION

      This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that Defendants, all employees of DOCS, violated his federal constitutional rights. Now before the Court are two motions: 1) a motion [#9] to dismiss for failure to state a claim by defendants Al Herdzik ("Herdzik"), Robert Kirkpatrick ("Kirkpatrick"), Anthony Zon ("Zon"), and Martin Kearney ("Kearney"); and 2) a motion [#13] for summary judgment by defendants Thomas Schoellkopf ("Schoellkopf") and Donald Selsky ("Selsky"). For the

reasons that follow, the motion to dismiss is granted, and the summary judgment motion is denied.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most-favorable to Plaintiff, the non-moving party. At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"). All defendants except Selsky were employed at Wende. Specifically, Zon and Kirkpatrick were Superintendents of Wende, Kearney was a Corrections Captain, Herdzik was a Corrections Lieutenant, John Attea ("Attea"), Edwin Mendez ("Mendez"), and Robert Kyle ("Kyle") were Corrections Officers, and Schoellkopf was a Hearing Officer. Selsky was DOCS Director of Special Housing.

On or about May 16, 2005, Plaintiff was housed in Wende's Special Housing Unit ("SHU"), when Kyle, Mendez, and Attea physically removed another inmate, Figueroa, from a cell adjacent to Plaintiff's cell. Plaintiff "verbally intervened" in the conflict by telling the officers that Figueroa was deaf, and that he therefore could not comprehend their verbal commands to him. The officers responded by taunting Plaintiff, and telling him that he would "be next." Additionally, Herdzik told Plaintiff that by verbally intervening in the situation with Figueroa, he was "inciting" the other inmates, and that Herdzik would "remember this," which Plaintiff characterizes as "an overt threat of retaliation." Later that day, Plaintiff filed an inmate grievance, claiming that Herdzik had threatened him. (Grievance Dated May 16, 2005).

On or about May 27, 2005, Plaintiff was released from the SHU and placed back in Wende's general population, in B Block, where Kyle, Attea, and Mendez were assigned to work. Prior to that, Plaintiff had written to Zon and Kearney, asking that he not be

2

placed in B Block. Plaintiff also claims that sometime between May 23, 2005 and May 27, 2005, he asked Kearney not to be placed back in B Block. In a letter to Kearney, Plaintiff described their conversation as follows: "[W]e had a discussion where I requested not to be released from SHU to B Block. In turn, you walked away stating, 'Well, Shapard, you know, you have to go wherever we have room for you.' Or something to that effect." (June 13, 2005 letter to Kearney, attached to Complaint).

On or about June 7, 2005, in B Block, Plaintiff alleges that Kyle, Attea, and Mendez assaulted him without provocation, causing him lacerations, contusions, and a concussion. Plaintiff subsequently wrote a letter to Zon, complaining about the assault. However, Defendants maintain that Plaintiff attacked Attea without provocation, and that they merely used reasonable force to subdue Plaintiff. Subsequently, Kyle issued Plaintiff a misbehavior report, charging him with assault on staff and refusing a direct order.

Prior to the ensuing Tier III disciplinary hearing, Plaintiff, who was confined to the SHU pending the hearing, requested the aid of an employee assistant. However, Plaintiff objected to the employee assistant assigned to his case, because he believed that the employee was in or near B Block when the assault allegedly occurred. In that regard, Plaintiff alleges, "upon information and belief," that the assistant "was a witness and passive participant in the alleged assault on staff." (Complaint ¶ 33). In any event, Plaintiff provided the assigned employee assistant with several pages of requests, asking him to, among other things, interview witnesses and obtain videotape evidence. The employee complied with many of the requests, but not others.

On or about June 14, 2005, Schoellkopf, the designated hearing officer, commenced Plaintiff's Tier III disciplinary hearing. Plaintiff raised various objections during

3

the course of the hearing, including that the employee assistant had not provided adequate assistance, and that Schoellkopf was biased. Plaintiff also requested that a number of documents be produced. With regard to the employee assistant, Plaintiff believed that the assistant had falsely indicated that certain inmate witnesses had declined to testify at the hearing. After hearing Plaintiff's objections, Schoellkopf obtained many of the documents that Plaintiff had requested. Schoellkopf also contacted the various inmates that Plaintiff had designated as potential witnesses, and confirmed that they either did not witness the incident or did not want to testify. Schoellkopf also questioned some of the inmates regarding their knowledge of the event and/or their willingness to testify, and their testimony was recorded and played for Plaintiff, although Plaintiff was not permitted to observe their testimony, since he was confined in the SHU, while they were housed in B Block. Plaintiff maintains, though, that by taking these steps, Schoellkopf was essentially doing the employee assistant's job, and was "no longer an impartial hearing officer." (Complaint ¶ 44).

At the completion of the hearing, Schoellkopf found Plaintiff guilty of both charges and sentenced him to, *inter alia*, two years in the SHU and two years loss of good time credit. Plaintiff appealed, and Zon affirmed Schoellkopf's determination. Plaintiff appealed that determination to Selsky, who affirmed the convictions but reduced the sentence to one year in the SHU and one year loss of good-time credit.

On or about November 27, 2005, Plaintiff commenced a proceeding in New York State Supreme Court, Erie County, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), seeking to set aside his disciplinary conviction and sentence. In that regard, Plaintiff alleged that his due process rights were violated at the Tier III

4

disciplinary hearing. On August 16, 2006, the Honorable Shirley Troutman, Acting Justice of Supreme Court, denied the Article 78 petition.

On or about May 1, 2006, Plaintiff spoke with Kirkpatrick, who had replaced Zon as Superintendent of Wende. Plaintiff told Kirkpatrick about the alleged assault, and stated, "'I cant' wait for round three' making reference to earlier excessive use of force incidents of November 29, 2004[1] and June 7, 2005." (Complaint ¶ 64).

Plaintiff was subsequently charged with Assault in the Second Degree, in violation of the New York Penal Law, § 120.05(7), in connection with his alleged assault on Attea. The relevant statute provides: "A person is guilty of assault in the second degree when: ...(7) Having been charged with or convicted of a crime and while confined in a correctional facility . . . pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person." New York Penal Law § 120.05(7) (McKinney 2009). On July 16, 2007, Plaintiff pleaded guilty and was sentenced to fifteen years to life as a persistent violent felon. As part of his plea, Plaintiff admitted that on June 7, 2005, he assaulted and injured Attea. (Docket No. [#16-5] at 35).

On April 2, 2008, Plaintiff commenced this action. Plaintiff maintains that: 1) Kyle, Attea, and Mendez used excessive force against him, in violation of the Eighth Amendment; 2) Herdzik, Kyle, Attea, and Mendez retaliated against him, in violation of the

---

[1] It is unclear from the Complaint what allegedly occurred on November 29, 2004. However, in a letter Plaintiff submitted in response to Defendants' motions, he describes an incident in or about November 2004, in the B Block at Wende, where he was found in possession of methadone and a metal shank. He states that upon discovering these items, "guards" "tried to assault" him, but did not injure him, except for his "ego." (Docket No. [#25] at 35). Plaintiff apparently received six months in SHU for those offenses, and was serving that sentence, when the incident involving Figueroa occurred.

First Amendment; 3) Schoelkopf and Selsky deprived him of due process, in violation of the Fourteenth Amendment; and 4) Zon, Kearney, and Kirkpatrick failed to protect him from being assaulted by Attea, Mendez, and Kyle, in violation of the Eighth Amendment.

On September 11, 2008, Herdzik, Zon, Kearney, and Kirkpatrick filed the subject motion [#9] to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), seeking the dismissal of all claims against them. Zon, Kearney, and Kirkpatrick contend that the Complaint fails to state a claim against them for failing to protect Plaintiff against Attea, Kyle, and Mendez, while Herdzik contends that the Complaint fails to state a retaliation claim against him.

On September 25, 2008, Selsky and Schoellkopf filed the subject motion [#13] for summary judgment.[2] Movants raise several arguments. First, they contend that since Plaintiff's due process claims raise the same issues as his Article 78 proceeding, such claims are barred by res judicata/collateral estoppel. Alternatively, Selsky and Schoellkopf maintain that, to the extent Plaintiff's due process claim "seeks a reversal of the Article 78 proceeding," it is barred by the *Rooker-Feldman* doctrine. Additionally, movants state that Plaintiff's due process claims should be barred by his admission, as part of his guilty plea, that he assaulted Attea. And finally, they argue that the procedural due process claim lacks merit.

On April 9, 2009, DOCS reversed the Tier III convictions at issue in this action, and

---

[2]In their Notice of Motion [#13], Defendants provided Plaintiff with an *Irby* notice. *See, Irby v. New York City Transit Authority*, 262 F.3d 412, 414 (2d Cir. 2001) ("[T]he moving party should routinely provide a pro se party with notice of the requirements of Rule 56, and of the consequences of noncompliance therewith, contemporaneous with the serving of the motion for summary judgment on the pro se litigant.").

expunged Plaintiff's record. (Docket No. [#25] at 8). Consequently, on June 5, 2009, the New York State Supreme Court, Appellate Division Fourth Department, dismissed Plaintiff's Article 78 appeal as moot. *See, Shapard v. Zon*, 63 A.D.3d 1661, 879 N.Y.S.2d 744 (4th Dept. 2009).

On or about December 3, 2008, Plaintiff filed his response to both of Defendants' motions. (See, Plaintiff's letter to Court dated April 22, 2009, Docket No. [#25] at 2).

## DISCUSSION

At the outset, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### *Section 1983*

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> ***
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

7

> (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

### *Motion to Dismiss*

Herdzik, Kirkpatrick, Zon, and Kearney are moving to dismiss pursuant to Rule 12(b)(6). As recently clarified by the U.S. Supreme Court, the standard to be applied to a 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly,* 550 U.S.544, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009). When applying this standard, a district court must accept the allegations contained in the

complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Moreover, the Court is quite limited as to what it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

Here, at the outset, it is clear that Kirkpatrick is entitled to dismissal of the claim against him, since he was not personally involved in any alleged violation. Plaintiff merely alleges that he spoke to Kirkpatrick in May 2006, a year after the alleged assault, and said, "'I cant' wait for round three' making reference to earlier excessive use of force incidents of November 29, 2004 and June 7, 2005." (Complaint ¶ 64). Such allegation is insufficient to impose liability on Kirkpatrick for any of the matters complained of in this lawsuit.

Zon and Kearney maintain that the "failure to protect" claims against them must be dismissed, since "[t]here is no allegation that Plaintiff presented any evidence that he was

9

in danger of a substantial risk of serious harm." (Defendants' Memo of Law [#11] at 4). For a claim alleging a failure to protect an inmate from harm, the applicable legal principles are clear:

> First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." [*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)]. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

*Hines v. Lacy*, 189 F.3d 460, 1999 WL 642915 at *3 (2d Cir.1999) (unpublished). In this case, the Court agrees that the Complaint fails to allege sufficient facts to plausibly state a claim against Zon or Kearney, since Plaintiff merely indicates that he told them that he did not want to be housed in B Block. There is no indication that being placed in B Block posed a substantial risk of harm to Plaintiff of being assaulted by Kyle, Attea, or Mendez, nor is there any indication that he made Zon or Kearney aware of such a risk. Plaintiff's general request that he not be placed back in B Block is not sufficient to put Defendants on notice that he faced a substantial risk of serious harm. Consequently, the claims against Zon and Kearney are dismissed.

Herdzik also maintains that the Complaint fails to state a claim against him for retaliation. The general legal principles applicable to inmate First Amendment retaliation claims are clear:

> Courts properly approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act. Thus, . . . a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2)

10

> that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

*Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citations and internal quotation marks omitted). "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the [protected] speech played a substantial part in the adverse action." *Id*. at 354 (citation and internal quotation marks omitted).

On this issue, the Complaint alleges only that Herdzik told Plaintiff that, by verbally intervening in the situation with Figueroa, he was "inciting" the other inmates, and that Herdzik would "remember this," after which Plaintiff filed a grievance, accusing Herdzik of threatening him. From these facts, Plaintiff concludes that Herdzik "orchestrated the assault on him" by Kyle, Attea, and Mendez, which allegedly occurred three weeks later. (Complaint ¶ 51). However, the facts alleged do not plausibly suggest that Herdzik was involved in the alleged attack by Kyle, Attea, and Mendez. That is, from these alleged facts, the Court cannot draw a reasonable inference that Herdzik was involved in the alleged assault. *See, Ashcroft v. Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted). There is no factual allegation that would plausibly suggest a causal link between Herdzik's comment and the assault. Even temporal proximity does not provide a causal link, since there is still no indication that Herdzik had anything to do with the alleged assault. Accordingly, the claim against Herdzik is dismissed.

### *Summary Judgment*

The Court will now consider the summary judgment application by Schoellkopf and

Selsky. The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).

Here, Schoellkopf and Selsky contend that the due process claim against them is barred by res judicata/collateral estoppel, since judgment was entered against Plaintiff in the Article 78 proceeding, which raised the same claim. However, subsequent to the filing of this motion, DOCS reversed Plaintiff's conviction, and Plaintiff's appeal from the adverse ruling in Supreme Court, Erie County, was dismissed as moot. The Supreme Court, Appellate Division Fourth Department, did not specifically state that it was vacating Judge Troutman's ruling. *See, Shapard v. Zon*, 63 A.D.3d 1661, 879 N.Y.S.2d 744 (4th Dept. 2009). Nevertheless, the Court finds that the adverse ruling in Supreme Court, Erie County, does not bar Plaintiff from pursuing a due process claim before this Court. In that regard, Plaintiff was denied review of that decision because of DOCS's actions in reversing the disciplinary conviction, and therefore, to apply collateral estoppel/res judicata would penalize Plaintiff even though he was denied appellate review. *See, Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 41 F.3d 62, 67 (2d Cir. 1994) ("A party should not suffer the adverse res judicata effects of a district court judgment when it is denied the benefit of appellate review through no fault of its own.") (citation omitted).

13

Consequently, Defendants' summary judgment motion is denied to the extent that it is based on res judicata/collateral estoppel grounds.

Schoellkopf and Selsky further contend that Plaintiff's due process claim is barred by his guilty plea, in which he admitted assaulting Attea. In support of their position, they rely on two cases: *Green v. Montgomery*, 43 F.Supp.2d 239, 242 (E.D.N.Y. 1999) and *Dye v. Virts*, No. 03-CV-6273L, 2004 WL 2202638 (W.D.N.Y. Sep. 28, 2004). Neither of those cases, though, involved the precise issue that is before the Court, which is, whether Plaintiff may establish that his procedural due process rights were violated at a prison disciplinary hearing where he was charged with assaulting a corrections officer and refusing a direct order, even though he later pleaded guilty in court to assaulting the corrections officer. Nor has the Court discovered any case supporting Defendants' argument. On the other hand, the Court has discovered some authority to the contrary. *See, Holt v. Caspari*, 961 F.2d 1370, (8th Cir. 1992) (Heaney, J., dissenting) ("I do not believe that Holt's guilty plea to criminal charges arising out of the same incident can negate his right to procedural due process in connection with the prison disciplinary proceeding. The guilty plea means only that Holt cannot demonstrate actual injury flowing from any due process denial that occurred."); *U.S. ex rel. Noll v. Fay*, 219 F.Supp. 262, 266 (S.D.N.Y. 1963) ("Whether or not petitioner was guilty of the crime is, of course, irrelevant to the determination of whether or not he was afforded procedural due process."). In any event, Defendants have not established their right to judgment on this point.

Lastly, Schoellkopf and Selsky contend that they are entitled to summary judgment on the merits. However, after the motion was filed, DOCS reversed Plaintiff's conviction and expunged his disciplinary record. The reason for that is unclear, and may raise issues

14

of fact. Additionally, Plaintiff has not yet had an opportunity to conduct discovery, and summary judgment is ordinarily not appropriate prior to discovery. *See, Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir.2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). Accordingly, the summary judgment motion is denied.

## CONCLUSION

The motion to dismiss [#9] is granted, and the summary judgment motion [#13] is denied. The Clerk of the Court is directed to terminate Herdzik, Kirkpatrick, Zon, and Kearney as parties to this action. By separate order the Court will refer this case to a United States Magistrate Judge, who will conduct a scheduling conference and oversee discovery and all other non-dispositive pre-trial matters.

Dated: November 16, 2009
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge