UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER SHAPARD,
                        Plaintiff,
      -v-                                                   DECISION AND ORDER

JOHN ATTEA, et al.,                                     08-CV-6146 CJS
                        Defendants.
_____

APPEARANCES

For Plaintiff:                  Christopher Shapard, Pro Se
                                    92-A-4434
                                    Auburn Correctional Facility
                                    Box 618
                                    Auburn, New York 13021

For Defendants:             Gary M. Levine, Esq.
                                    Assistant Attorney General of Counsel
                                    New York State Office of the Attorney General
                                    144 Exchange Boulevard, Suite 200
                                    Rochester, New York 14614

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants, all employees of DOCCS, violated his federal constitutional rights. Now before the Court is a motion for summary judgment (Docket No. [#47]) by defendants Thomas Schoellkopf ("Schoellkopf") and Donald Selsky ("Selsky"). The application is granted.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most-favorable to Plaintiff, the non-moving party. At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"). All defendants except Selsky, DOCCS Director of Special Housing, were employed at Wende. Specifically, Anthony Zon ("Zon") and Robert Kirkpatrick ("Kirkpatrick") were Superintendents of Wende, Martin Kearney ("Kearney") was a Corrections Captain, Al Herdzik ("Herdzik") was a Corrections Lieutenant, John Attea ("Attea"), Edwin Mendez ("Mendez"), and Robert Kyle ("Kyle") were Corrections Officers, and Schoellkopf was a Hearing Officer.

On or about May 16, 2005, Plaintiff was housed in Wende's Special Housing Unit ("SHU"), when Kyle, Mendez, and Attea physically removed another inmate, Figueroa, from a cell adjacent to Plaintiff's cell. Plaintiff "verbally intervened" in the conflict by telling the officers that Figueroa was deaf, and that he therefore could not comprehend their verbal commands to him. Plaintiff maintains that the officers responded by taunting him, and by telling him that he would "be next." Defendants, however, contend that Plaintiff was being taunted by other inmates.[1] In any event, Plaintiff contends that Herdzik told him that by verbally intervening in the situation with Figueroa, he was "inciting" the other inmates, and that Herdzik would "remember this," which Plaintiff characterizes as "an overt threat of retaliation." Later that day, Plaintiff filed an inmate grievance, claiming that Herdzik had threatened him. (Grievance Dated May 16, 2005).

---

[1] Plaintiff admits that he could not distinguish whether certain statements were made by officers or inmates, but he does indicate that it was a fellow inmate who called him "Christine." See, Plaintiff's Deposition at pp. 73-74, 78-88.

At that time, Plaintiff was nearing the end of his SHU sentence, when he would return to general population. Plaintiff wrote to Zon and Kearney, asking that he not be placed in B Block, where Kyle, Attea, and Mendez were assigned to work. Plaintiff also claims that sometime between May 23, 2005 and May 27, 2005, he verbally asked Kearney not to house him in B Block. In a letter to Kearney, Plaintiff described their conversation as follows: "[W]e had a discussion where I requested not to be released from SHU to B Block. In turn, you walked away stating, 'Well, Shapard, you know, you have to go wherever we have room for you.' Or something to that effect." (June 13, 2005 letter to Kearney, attached to Complaint). On or about May 27, 2005, Plaintiff was released from the SHU and placed in B Block.

On or about June 7, 2005, in B Block, Plaintiff alleges that Kyle, Attea, and Mendez assaulted him without provocation, causing him lacerations, contusions, and a concussion. Defendants counter that it was Plaintiff who attacked Attea without provocation, and that they merely used reasonable force to subdue him.[2] Kyle issued Plaintiff a misbehavior report, charging him with assault on staff and refusing a direct order. Plaintiff subsequently wrote a letter to Zon, complaining about the assault by Attea, Mendez, and Kyle.

Prior to the ensuing Tier III disciplinary hearing on the misbehavior report issued by Kyle, Plaintiff, who was confined to the SHU pending the hearing, requested the aid of an employee assistant. Angelo Amato ("Amato") was the employee assistant assigned to help Plaintiff. See, Def. Summary Judgment Motion, Ex. A, Pl. Article 78 Complaint ¶ 7. Plaintiff provided Amato with several pages of requests, asking him, among other things,

---

[2]As discussed further below, Plaintiff later pleaded guilty to assaulting Attea.

to interview witnesses and obtain documents and videotape evidence. Amato complied with many of the requests, but not others. Plaintiff complains that Amato did not conduct all of the tasks himself, but instead delegated them to "the Captain's secretary." Def. Summary Judgment Motion, Ex. A, Article 78 Complaint ¶ 7.

On or about June 14, 2005, Schoellkopf, the designated hearing officer, commenced Plaintiff's Tier III disciplinary hearing. See, Transcript of Hearing [#16-2] Part I, [#16-3] Part II. Before the presentation of any evidence, Plaintiff raised various objections, including an objection that Amato had not provided adequate assistance, and that Schoellkopf was biased. Plaintiff also requested that a number of additional documents be produced.

With regard to Amato's assistance, Plaintiff believed that Amato had falsely indicated that certain inmate witnesses had declined to testify at the hearing. In response to that objection, Schoellkopf called Amato to testify, and extensively questioned him about the steps he had taken to assist Plaintiff. *See*, [#16-2] at pp. 46-59. Amato indicated that Plaintiff had given him a three-page list of information that he wanted, consisting of thirty items. *Id*. at 47. Amato indicated that he gathered "the vast majority" of information that Plaintiff requested. *Id*. at 48. Plaintiff had then asked Amato to get additional information, including surveillance videos, but Amato was not able to obtain a video of the incident for which Plaintiff was issued the misbehavior report. *Id*. Amato further testified that he personally interviewed all seven of the inmates whom Plaintiff requested as witnesses, and that all of them declined to testify. *Id*. at 49-50. Plaintiff complained, though, that he did not believe Amato. *Id*. at 60. Plaintiff also complained that Amato had not obtained certain

records, such as documentation showing whether batons were issued to the corrections officers who responded to the incident. *Id*. at 53. Plaintiff agreed, however, that Amato had provided him with a copy of his injury report, names and identification numbers of potential inmate witnesses, and a use of force report. *Id*. at 54. Plaintiff nevertheless complained that Amato had not obtained copies of inmate grievances that Plaintiff had filed prior to the incident, but Schoellkopf ruled that they were not relevant in any event. *Id*. at 55. Plaintiff also requested copies of DOCCS "use of force" directives, but Schoellkopf denied the request. *Id*. at 58. Schoellkopf then excused Amato from the hearing.[3]

As Plaintiff explained it to Schoellkopf, his defense was that he did not assault anyone, and that he was set up by the corrections officers. In that regard, Plaintiff essentially testified that prior to his release from SHU to B Block, he had told several people that he was worried that he would be attacked by the officers involved with Figueroa's cell extraction. Plaintiff asked Schoellkopf to obtain grievances that he had filed against staff, in order to show that they had a motive to frame him, and documentation showing that Plaintiff had requested not to be housed in B Block. Plaintiff also asked Schoellkopf to allow certain inmates from B Block to testify about whether they had seen or heard anything, because he believed that it was possible they might have heard staff conspiring against him.[4] Schoellkopf indicated that the inmates could testify, but they would testify out of Plaintiff's presence, since he was confined to SHU and the other

---

[3] As discussed further below, later during the hearing, Plaintiff objected to Amato being assigned to his case, because he believed that Amato was in or near B Block when the assault allegedly occurred. In that regard, Plaintiff alleges, "upon information and belief," that Amato "was a witness and passive participant in the alleged assault on staff." (Complaint ¶ 33).

[4] Plaintiff does not believe that any inmate actually saw what happened, since the incident occurred "in between the two companies." Pl. Dep. at pp. 125-126.

inmates were in general population. *Id*. at 72. Schoellkopf told Plaintiff, however, that he would tape the testimony and play it back for him. *Id*.

Subsequently, Schoellkopf took testimony from inmates who Plaintiff had identified as possible witnesses. *See, e.g., id*. at 77. However, the inmates either gave answers that were irrelevant and or unresponsive to Schoellkopf's questions, or they indicated that they witnessed nothing or did not want to be involved. *See, id*. at 77-85. Several inmates declined to testify altogether. See, [#16-3] at pp. 9-14.

Officer Kyle then testified that Plaintiff attacked Attea by striking him in the head. [#16-3] at 88-89. Kyle further testified that he and other officers ordered Plaintiff to stop fighting, but he refused. *Id*. at 89. Plaintiff retorted that Kyle was "full of shit," and that everything he said was "a lie." *Id*. at 90.

At the completion of the hearing, Schoellkopf found Plaintiff guilty of the charges, and explained the reason for his decision. *See*, [#16-3] at 30-32, 82. Schoellkopf sentenced Plaintiff to, *inter alia*, two years in the SHU and two years loss of good time credit. Plaintiff appealed, and Zon affirmed Schoellkopf's determination. Plaintiff appealed that determination to Selsky, who affirmed the convictions but reduced the sentence to one year in the SHU and one year loss of good-time credit. Notably, in that regard, Prisoners' Legal Services of New York filed an appeal brief on Plaintiff's behalf, arguing in part that his sentence should be thrown out or reduced because Plaintiff was mentally ill, and because Schoellkopf had not considered Plaintiff's mental health records, even though he was never asked to do so. See, [#16-3] at 87-89.

On or about July 13, 2005, Plaintiff attempted to file criminal assault charges against

Herdzik, Kyle, Mendez and Attea with the New York State Police. The New York State Police later informed Plaintiff that it had forwarded his complaint to DOCCS's Inspector General for investigation and a response.

On or about November 27, 2005, Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Erie County, seeking to set aside his disciplinary conviction and sentence. In that regard, Plaintiff alleged that his due process rights were violated at the disciplinary hearing. On August 16, 2006, the Honorable Shirley Troutman, Acting Justice of Supreme Court, denied the Article 78 petition. Plaintiff filed an appeal to the New York State Supreme Court, Appellate Division Fourth Department.

Plaintiff was subsequently charged with Assault in the Second Degree, in violation of the New York Penal Law, § 120.05(7), in connection with his alleged assault on Attea. The relevant statute provides: "A person is guilty of assault in the second degree when: ...(7) Having been charged with or convicted of a crime and while confined in a correctional facility . . . pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person." New York Penal Law § 120.05(7) (McKinney 2009). On July 16, 2007, Plaintiff pleaded guilty and was sentenced to fifteen years to life as a persistent violent felon. As part of his plea, Plaintiff admitted that on June 7, 2005, he assaulted and injured Attea. (Docket No. [#16-5] at 35).

On April 2, 2008, Plaintiff commenced this action. The Complaint maintained that: 1) Kyle, Attea, and Mendez used excessive force against him, in violation of the Eighth Amendment; 2) Herdzik, Kyle, Attea, and Mendez retaliated against him, in violation of the First Amendment, by assaulting him; 3) Schoelkopf and Selsky deprived him of due

7

process in connection with his disciplinary hearing, in violation of the Fourteenth Amendment; and 4) Zon, Kearney, and Kirkpatrick failed to protect him from being assaulted by Attea, Mendez, and Kyle, in violation of the Eighth Amendment.

On September 11, 2008, Herdzik, Zon, Kearney, and Kirkpatrick filed a motion [#9] to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), seeking the dismissal of all claims against them. Zon, Kearney, and Kirkpatrick contended that the Complaint failed to state a claim against them for failing to protect Plaintiff against Attea, Kyle, and Mendez, while Herdzik contended that the Complaint failed to state a retaliation claim against him.

On September 25, 2008, Selsky and Schoellkopf filed a motion [#13] for summary judgment, based on several arguments. First, they maintained that since Plaintiff's due process claims raised the same issues as his Article 78 proceeding, such claims were barred by res judicata/collateral estoppel. Alternatively, Selsky and Schoellkopf maintained that, to the extent Plaintiff's due process claim sought "a reversal of the Article 78 proceeding," it was barred by the *Rooker-Feldman* doctrine. Additionally, movants argued that Plaintiff's due process claims should be barred by his admission, as part of his guilty plea, that he had assaulted Attea. And finally, they argued that the procedural due process claim lacked merit.[5]

On April 9, 2009, Norm Bezio ("Bezio"), Selsky's successor, reversed the Tier III convictions at issue in this action, and expunged Plaintiff's record. (Docket No. [#25] at 8). Consequently, on June 5, 2009, the New York State Supreme Court, Appellate Division

---

[5] On or about December 3, 2008, Plaintiff filed his response to both of Defendants' motions. (See, Plaintiff's letter to Court dated April 22, 2009, Docket No. [#25] at 2).

Fourth Department, dismissed Plaintiff's Article 78 appeal of Justice Troutman's ruling as moot. *See, Shapard v. Zon*, 63 A.D.3d 1661, 879 N.Y.S.2d 744 (4th Dept. 2009).

On November 16, 2009, this Court issued a Decision and Order [#28], granting the motion to dismiss and denying the motion for summary judgment. In that regard, the Court dismissed the claims against Kirkpatrick, Zon, Kearney, and Herdzik. However, the Court subsequently granted Plaintiff's motion for reconsideration, and reinstated the retaliation claim against Herdzik. *See*, Decision and Order [#55] (reinstating retaliation claim against Herdzik). The Court denied the motion for summary judgment on the due process claims since, at that time, it was unclear why Bezio had reversed Plaintiff's conviction. Accordingly, the claims that are presently pending before the Court are: 1) excessive force claims against Attea, Mendez, and Kyle; 2) retaliation claims against Herdzik, Attea, Mendez, and Kyle; and 3) due process claims against Schoellkopf and Selsky.

On June 23, 2010, Schoellkopf and Selsky filed the subject motion for summary judgment [#47] on the due process claims against them.[6] In that regard, they contend that Plaintiff received all of the procedural due process to which he was entitled at the hearing, and that his conviction was supported by sufficient evidence. For example, Defendants contend that Plaintiff received extensive assistance from his assigned employee assistant, Amato, and that Schoellkopf addressed, and attempted to correct, any deficiencies in such assistance that Plaintiff identified. Defendants further state that Amato provided at least some assistance to Plaintiff, which is all that is constitutionally required, and that any

---

[6]Defendants provided the *pro se* Plaintiff with the *Irby* notice required by Local Rule of Civil Procedure 56.2. *See*, Docket No. [#49]. Defendants apparently concede that there are triable issues of fact concerning the claims against Attea, Mendez, and Kyle.

9

alleged deficiency would therefore be harmless error. Additionally, Defendants indicate that Schoellkopf was fair and impartial, and that his determination was supported by sufficient evidence, inasmuch as it was supported by the testimony of Officer Kyle, who witnessed the incident, as well as by written reports. Defendants also point out that the misbehavior report, which charged him with assault on staff and disobeying an order, is supported by Plaintiff's subsequent admission, as part of his guilty plea, that he assaulted Attea.[7]

Defendants admit that the tier hearing conviction was subsequently overturned and expunged, but they contend that such fact does not establish a due process violation. In that regard, they maintain that the conviction was reversed because Selsky's successor, Norm Bezio ("Bezio"), determined that Plaintiff had mistakenly been informed at the hearing that no tape existed of Figueroa's cell extraction on May 16, 2005, when in fact such a tape did exist.[8] However, such tape did not concern the event for which Plaintiff was charged in the misbehavior report, which occurred on June 7, 2005. Defendants also maintain that the tape disproves Plaintiff's contention that corrections officers taunted him during the Figueroa cell extraction.[9]

As discussed further below, Plaintiff responds that he did not receive procedural due

---

[7] Plaintiff later moved to withdraw his plea, but that application was denied. See, Pl. Dep. at pp.5-6, 27. In that regard, Plaintiff contends that he committed perjury during the plea, because he wanted to extend his sentence in New York State, rather than being transferred to Connecticut, where he must serve a consecutive life sentence, because he wanted the opportunity of having conjugal visits with a New York woman whom he hoped to marry. Id. at pp. 27-29.

[8] See, Transcript of Plaintiff's Tier Disciplinary Hearing, [#16-2] at 94 (Schoellkopf told Plaintiff that he was advised by the Discipline Office that there was no videotape on file of the SHU cell extraction of Figueroa).

[9] The tape indicated that Plaintiff was taunted by another inmate.

10

process, because Amato failed to provide sufficient assistance, and because Schoellkopf was biased.

## DISCUSSION

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The underlying facts contained in affidavits, attached exhibits,

11

and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

It is well settled that where prison inmates have a liberty interest in avoiding disciplinary confinement[10], they are entitled to procedural due process protections: "Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). To comport with due process, a disciplinary ruling must be supported by "some evidence." *Id*. at 487-488 (citation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board."

---

[10]"A prisoner's liberty interest is implicated when an institution's disciplinary decision results in an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'" *Luna v. Pico*, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (*quoting Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Id*. at 488 (emphasis added, citation omitted). The Second Circuit interprets this statement to require "'reliable evidence' of the inmate's guilt." *Id*.

Inmates who are confined to SHU pending a disciplinary hearing also have a "limited" constitutional right to assistance in preparing a defense:

> [In *Eng v. Coughlin*, 858 F.2d 889, 891-92 (2d Cir. 1988)] we warned: '[F]or inmates disabled by confinement in SHU, or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment. Further, the assistance must be provided in good faith and in the best interests of the inmate.' We therefore held that in the future "an assigned assistant who does nothing to assist a disabled prisoner ... has failed to accord the prisoner his limited constitutional due process right of assistance."

*Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998) (*quoting Eng v. Coughlin*, 858 F.2d 889, 891-92 (2d Cir. 1988)). The assistant's obligations "include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Eng v. Coughlin*, 858 F.2d at 898.

An inmate's procedural due process rights also include the right to an impartial hearing officer. "This standard is satisfied by a hearing officer who does not prejudge the evidence and who cannot say how he would assess evidence he has not yet seen. However, hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Murray v. Jacobs,* No. 04–CV–6231–CJS, 2011 WL 4074531 at *7 (W.D.N.Y. Sep. 13, 2011) (citations and internal quotation marks omitted).

Plaintiff contends that he was denied assistance in preparing for his hearing, and that Schoellkopf abdicated his role as an impartial hearing officer by helping him gather evidence for the hearing. For support, Plaintiff relies principally on *Lee v. Coughlin*, 902

F.Supp. 424 (S.D.N.Y. 1995) ("*Lee*") and *Pino v. Dalsheim*, 605 F.Supp. 1305 (S.D.N.Y. 1984) ("*Pino*"). However, because of their dissimilar facts, neither of these cases is particularly relevant in this action. In *Lee*, the inmate was denied *any* assistance in preparing for his disciplinary hearing, because he refused to cooperate with the designated assistant, who was not one of the assistants that the inmate had requested. *See, Lee v. Coughlin*, 902 F.Supp. at 427-428. The court held that it was a denial of the inmate's due process rights not to have provided him with another assistant. *Id*. at 431-434. The court in *Lee* further rejected the defendants' argument that such failure was rendered harmless because the impartial hearing officer had essentially acted as the inmate's assistant. The court indicated that such assistance, provided by a hearing officer, would be "inconsistent" with the hearing officers' role,[11] and further noted, significantly, that there was no indication that the hearing officer had provided such assistance. *Id*. at 433. In *Pino*, an inmate was charged with possessing marijuana in an SHU cell into which he had recently been placed, although the inmate had been thoroughly searched prior to be placed in the cell, and although there was evidence that the marijuana had been left in the cell by a prior occupant and there was no indication of when the cell was last searched. *Pino*, 605 F.Supp. at 1311-1312, 1317-1318. The court held that the assistance provided to the inmate by his employee assistant was "less than adequate," because the assistant "fail[ed] without justification to carry out the most basic, reasonable, and non-disruptive requests

---

[11]As discussed further below, to the extent that *Lee* can be read as indicating that an impartial hearing officer can never assist an inmate at a hearing, the Court disagrees.

of the inmate." *Pino*, 605 F.Supp. at 1317-1318.[12]   The *Pino* court further found that the entire proceeding was fundamentally unfair for various reasons, including that the inmate was not permitted to call witnesses.   The *Lee* and *Pino* decisions are factually inapposite to the facts of this case.

In the instant case, Amato clearly provided significant meaningful assistance to Plaintiff prior to the hearing, even if he did not obtain every single document that Plaintiff requested. *See, Shepard v. Coughlin*, No. 91 CIV. 8725 (MBM), 1993 WL 77385 at *5 (S.D.N.Y. Mar. 16, 1993) ("When a prisoner is in SHU, an employee assistant should gather evidence, obtain documents and relevant tapes, and interview witnesses. At a minimum, he should perform the investigating tasks which the inmate, were he able, could perform for himself.  The law does not, however, require the assistant to obtain all documentary evidence. Plaintiff had no right to a private investigator.") (citation omitted). Plaintiff contends that Amato was not a constitutionally adequate assistant, because he may have been in the vicinity when the alleged assault occurred.  However, even assuming that Amato had been in the vicinity of the alleged assault, Plaintiff has not shown that Amato actually witnessed the incident, and even if Amato had witnessed the incident, Plaintiff has not shown that such fact affected his performance.  Significantly, Schoellkopf gave Plaintiff the opportunity to call Amato as a witness, to ask whether he witnessed the incident, and Plaintiff declined the offer. *See*, Hearing Transcript [#16-3] at  5.  Instead,

---

[12]Contrary to Plaintiff's contention that the hearing officer should not assist an inmate in preparing a defense, the court in *Pino* faulted the hearing officer for failing to investigate a potential defense which the employee assistant had failed to pursue. *Pino*, 605 F.Supp. at 1318 ("Pino asked Lieutenant Thompson, the presiding [hearing] officer, to pursue the logbook investigation that Novak [the employee assistant] had failed to carry out . . . . Although Thompson adjourned the proceeding for this purpose, the record reveals that his investigatory efforts were perfunctory and half-hearted.").

Plaintiff asked if he could re-call two other witnesses, Bryan and Cole, which Schoellkopf attempted to do, but the inmates declined to re-testify. *Id*. at 5-6, 14, 16, 24-25, 27-28.

Moreover, the additional assistance that Schoellkopf provided to Plaintiff during the hearing was not incompatible with his role as an impartial hearing officer. *See, Lewis v. Johnson*, No. 9:08-CV-482 TJM/ATB, 2010 WL 3785771 at *12-13 (N.D.N.Y. Aug. 5, 2010) (Inmate's right to assistance was not violated where he asked hearing officer to help, hearing officer did so, and the inmate was satisfied with the assistance; further noting that it is not a *per se* due process violation for a hearing officer to serve as an inmate's assistant) (Report & Recommendation adopted by 2010 WL 3762016 (N.D.N.Y. Sep. 20, 2010)) ; *see also, Clyde v. Bellnier*, 9:08-CV-909, 2010 WL 1489897 at *4-6 (N.D.N.Y. Apr. 13, 2010) (Holding that although the assigned assistant failed to provide the inmate with requested documents, the inmate was not denied assistance, since the hearing officer obtained the documents for the inmate. ). Although it was not required to do so, the Court has reviewed the entire hearing transcript, and finds that Schoellkopf gave Plaintiff wide latitude in presenting his defense. Moreover, Schoellkopf's decision was supported by sufficient reliable evidence, consisting primarily of Kyle's testimony. As Plaintiff admitted at deposition, the case turned on credibility, and Schoellkopf chose to accept Kyle's version of events. *See*, Pl. Dep. at 140-141. To the limited extent that Schoellkopf denied Plaintiff's requests, such as his requests for grievances and use of force directives, he was justified in doing so. The fact that certain inmates declined to testify was not Schoellkopf's fault.

The Court has considered all of the various claims raised by Plaintiff in light of the entire record, and finds that they lack merit. *See*, Pl. Opposition [#56]. Since Plaintiff

cannot demonstrate that he suffered a due process violation at the hearing, his claim against Selsky also lacks merit.

## CONCLUSION

The summary judgment motion of Schoellkopf and Selsky [#47] is granted, and the claims against them are dismissed with prejudice.

Dated:   November 30, 2011
         Rochester, New Yo

                                                 */s/ Charles J. Siragusa*
                                                 CHARLES J. SIRAGUSA
                                                 United States District Judge