UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER SHAPARD,

                       Plaintiff,

      -v-                                         DECISION AND ORDER

JOHN ATTEA, Correction Officer, EDWIN         08-CV-6146 CJS
MENDEZ, Correction Officer, ROBERT KYLE,
Correction Officer and AL HERDZIK,
Lieutenant,

                       Defendants.

---

APPEARANCES

For Plaintiff:        Cameron S. Friedman
                         Luke X. Flynn-Fitzsimmons
                         Noam Lerer
                         Paul, Weiss, Rifkind, Wharton & Garrison
                         1285 Avenue of the Americas
                         New York, New York 10019
                         Auburn, New York 13021

For Defendants:     Gary M. Levine, Esq.
                         Assistant Attorney General of Counsel
                         New York State Office of the Attorney General
                         144 Exchange Boulevard, Suite 200
                         Rochester, New York 14614

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants, all employees of DOCCS, used

retaliatory excessive force against him, in violation of his federal constitutional rights. Now before the Court is Defendants' motion (Docket No. [#92]) for leave to file a summary judgment motion beyond the court-imposed deadline for such applications, on the grounds that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). The motion is denied, and this action is dismissed *sua sponte* pursuant to *Heck v. Humphrey*, since Plaintiff's claims, if proven, would clearly imply the invalidity of his state-court conviction for assault arising from the same incident at issue in this action.

## BACKGROUND

On June 7, 2005, at Wende Correctional Facility ("Wende"), Corrections Officer Edwin Mendez ("Mendez") and/or Corrections Officer Rober Kyle ("Kyle") used force on Plaintiff, after they maintain that he attacked Corrections Officer John Attea ("Attea") without provocation. In particular, Mendez and/or Kyle struck Plaintiff several times with a baton, causing at least one laceration to Plaintiff's head that required stitches. At that time, Plaintiff was serving an indeterminate sentence of incarceration (twelve-and-a-half years to twenty-five years) in the State of New York for kidnaping, burglary and robbery, after which he was scheduled to serve a sixty-year term of imprisonment for a murder conviction in the State of Connecticut.

Following the incident on June 7, 2005, a Grand Jury in Erie County, New York, indicted Plaintiff for assaulting Attea. Specifically, the Grand Jury indicted Plaintiff for Assault in the Second Degree in violation of New York Penal Law § 120.05(7), which prohibits the intentional injury of another person while confined in a correctional facility. At all relevant times Penal Law § 120.05(7) provided:

> A person is guilty of assault in the second degree when: . . . (7) Having been charged with or convicted of a crime and while confined in a correctional facility, as defined in subdivision three of section forty of the correction law, pursuant to such charge or conviction, with intent to cause physical injury to another person, he causes such injury to such person or to a third person[.]

(McKinney's 2016).  On July 16, 2007, in New York State Supreme Court, Erie County, Plaintiff pled guilty to assaulting Attea, in violation of Penal Law § 120.05(7), and received a sentence of imprisonment of fifteen years to life.  During Plaintiff's plea colloquy, he acknowledged not only that he assaulted Attea, but that he initiated the actions that culminated in his assault on Attea.[1]

On April 2, 2008, Plaintiff commenced this action proceeding *pro se*.  In pertinent part, Plaintiff alleged that on June 7, 2005, Attea, Mendez and Kyle viciously assaulted him using punches, kicks and baton strikes.[2]  Plaintiff alleged that defendant Corrections Lieutenant Al Herdzik ("Herdzik") was not present during the attack, but "orchestrated" the beating in retaliation for grievances that Plaintiff had filed.  Attached to Plaintiff's verified Complaint [#1] is a letter that he purportedly wrote to Wende's Superintendent, Anthony Zon ("Zon"), on June 7, 2005, immediately following the assault.  In pertinent part, Plaintiff wrote: "I did not assault or attempt to assault any of the officers.  I was attacked and this was pure retaliation by C.O. Attea and, I believe, Lt. Herdzik." (emphasis in original).  Also attached to the Complaint [#1] is a copy of the

---

[1] Levine Declaration, Ex. C, Plea Transcript at pp. 10-11.  Plaintiff admits that this current lawsuit involves the same event for which he pled guilty to assaulting Attea. *See*, Pl. Deposition at p. 26 ("I pled guilty to an indictment that charged me with Assault in the Second Degree, that arose from the events of which we are contesting, yes.").

[2] Complaint [#1] at ¶ ¶ 20-27.

3

transcript from Plaintiff's Tier III disciplinary hearing, at which he testified that Attea, Mendez and Kyle attacked him without provocation, and that he "never assaulted any officers[.]"[3] The Complaint [#1] demands money damages, as well as an injunction requiring that closed-circuit television cameras be installed in "each housing area, lobby, cell gallery, hallway[ ] and corridor[ ]" at Wende, to "deter future physical abuse of prisoners."

On March 3, 2010, Defendants deposed Plaintiff at Auburn Correctional Facility ("Auburn"). At the deposition, Plaintiff reiterated that the defendant corrections officers assaulted him, and that he never assaulted them. For example, Plaintiff testified that he "was on defense the whole time" and that the only thing that he could do was "cover up until this whole event had finished."[4] Plaintiff further testified that the incident began when Attea punched him in the face "from the blind side" without warning, after which Mendez tackled him to the ground, Kyle kicked him in the face, the officers bent his legs back toward his head, and Kyle or Mendez struck him with a baton multiple times.[5] Plaintiff insisted that he never struck any officer: "I didn't strike anybody at any time," "[and] that includes Officer Attea."[6]

During the deposition, Plaintiff acknowledged that his claim in this action, that he never struck any of the corrections officers including Attea, contradicts his sworn plea

---

[3] Disciplinary Hearing Transcript at pp. 57-58, 84.

[4] Pl. Deposition at p. 48.

[5] Pl. Deposition at pp. 92-105.

[6] Pl. Deposition at p. 109; *see also, id.* at p. 123 (Reiterating that he never assaulted anyone.); *id.* at p. 126 ("I did not hit CO Atteta to start this thing.").

that he assaulted Attea. Plaintiff maintained, though, that he lied during his plea because he wanted to remain incarcerated in New York, rather than be returned to prison in Connecticut. On this point, Plaintiff testified, "I am innocent and [when I] pled guilty . . . I lied."[7]

On January 7, 2010, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a Scheduling Order [#32], directing *inter alia* that all discovery in this action be completed by July 30, 2010, and that all dispositive motions be filed by September 17, 2010.

On June 23, 2010, Defendants filed a motion for summary judgment [#47], on behalf of two defendants who are no longer parties to this action, which, on December 1, 2011, the Court granted. *See*, Decision and Order [#58]. As a result of the Court's rulings, only Attea, Mendez, Kyle and Herdzik remained as defendants, and the matter was ready for trial.

However, Plaintiff subsequently retained counsel, whom the Court permitted to conduct additional discovery. While such additional discovery was underway, on May 18, 2015, Defendants' counsel wrote to the Court requesting permission to file a another dispositive motion in this action. However, because the scheduling deadline for filing dispositive motions had already passed, and because counsel's letter did not explain the nature of the proposed dispositive motion or why it could not have been brought sooner, the Court denied Defendants' request, without prejudice to them making a further application demonstrating good cause.

---

[7] Pl. Deposition at p. 138.

On November 13, 2015, Defendants filed the subject application, consisting of both a request for leave to file a summary judgment motion, and a motion for summary judgment pursuant to *Heck v. Humphrey*. Defendants acknowledge that the application is late, but maintain that the Court should excuse the untimeliness due to counsel's excusable neglect. In particular, Defendants' counsel indicates that while he was aware of the facts discussed above, he "previously failed to recognize the law related to Plaintiff's plea of guilty to assaulting Attea and the ramifications such plea would have on the trial."[8] The Court understands Defendants' counsel to mean that he only belatedly recognized that Plaintiff's claim in this action implicates *Heck v. Humphrey*. Defendants further maintain that even if the Court is unwilling to consider the summary judgment motion, they will inevitably be entitled to dismissal of Plaintiff's claims at trial, since his claims are barred by *Heck v. Humphrey*.

Plaintiff opposes the application, and maintains that Defendants' counsel's "excusable neglect" is insufficient to establish "good cause" for extending the dispositive-motion deadline imposed by Magistrate Judge Feldman. Plaintiff further contends that Defendants' summary judgment motion must fail on the merits in any event, since his claims under § 1983 are theoretically compatible with his conviction for assaulting Attea, since a jury might disbelieve his version of the facts but nevertheless find that Defendants used excessive force.

---

[8] Levine Decl. [#92-2] at ¶ 3.

DISCUSSION

A preliminary issue is whether Defendants have shown good cause for failing to file the instant summary judgment motion on or before September 17, 2010, as required by Magistrate Judge Feldman's Scheduling Order [#32]. The Court finds that they have not done so. In that regard, the Scheduling Order [#32] directed that all dispositive motions be filed by September 17, 2010, and that "[n]o extension of the above cutoff dates [would] be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension." Defendants did not comply with the deadline, and the Court agrees with Plaintiff that they have not shown good cause for such failure. In that regard, "good cause" "depends on the diligence of the moving party," see, Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007), and Defendants were not diligent in pursuing the subject motion. For example, even putting aside the delay that followed Plaintiff's deposition in 2010, Defendants were not diligent even after they recognized the Heck v. Humphrey issue. Specifically, at least by May 2015, Defendants apparently recognized the Heck v. Humphrey issue, because that is when they initially requested leave to file a late summary judgment motion. However, after the Court denied that request without prejudice, Defendants waited until November 2015 to file the subject renewed application. Consequently, while the Court does not believe that Plaintiff would be prejudiced by Defendants' late motion, the Court cannot find that Defendants were diligent, and therefore they cannot establish good cause. See, Woodworth v. Erie Ins. Co., No. 05-CV-6344 CJS, 2009 WL 3671930 at *3 (W.D.N.Y. Oct. 29, 2009) ("Plaintiffs failed to [demonstrate good cause because they

have not met] the threshold diligence requirement.").

Nevertheless, the Court finds that it must dismiss the action *sua sponte* because pursuant to *Heck v. Humphrey*, Plaintiff's § 1983 claims cannot accrue unless and until he first succeeds in having his conviction for Assault in the Second Degree set aside. As the Second Circuit has observed, *Heck v. Humphrey*

> precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions. *Heck* requires that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the [challenged] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

*Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (*quoting Heck v. Humphrey*, 512 U.S. at 486-87, 114 S.Ct. at 2364).

Where the "*Heck v. Humphrey* bar" applies, a plaintiff simply has no actionable claim for damages under § 1983. Rather, such a claim cannot accrue until the Plaintiff obtains relief from the underlying criminal conviction. See, *Poventud v. City of New York*, 750 F.3d at 130 (Observing that where *Heck v. Humphrey* applies, the Plaintiff "ha[s] no cause of action under § 1983" because the cause of action does not accrue until the conviction has been set aside.); *see also, U.S. v. Valentine*, 343 Fed. Appx. 723, 724 (2d Cir. Aug. 31, 2009) (A plaintiff "is unable to pursue" a claim barred by *Heck v. Humphrey*); *Morris v. City of Suffolk, Va.*, 70 F.3d 112 (table), 1995 WL 686271 at *1 (4th Cir. Nov. 20, 1995) (A claim barred by *Heck v. Humphrey* is "not yet ripe for a

§ 1983 action."); *Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir. 2003) (Observing that in *Heck v. Humphrey*, the Supreme Court "denied the very existence of such a cause of action."); *Damond v. LeBlanc*, 552 Fed. Appx. 353, 354 (5th Cir. Jan. 16, 2014) (A claim barred by *Heck v. Humphrey* is "not cognizable" and "unripe."); *Plotkin v. U.S.*, 465 Fed. Appx. 828, 831 (11th Cir. Feb. 13, 2012) (A claim barred by *Heck v. Humphrey* "is not ripe and must be dismissed unless the conviction has been invalidated.").

Further, while *Heck* specifically pertains to § 1983 claims for money damages, courts have also held that *Heck* bars claims for injunctive relief that would similarly imply the invalidity of the plaintiff's underlying criminal conviction. *See, e.g., Hamm v. Obama*, 448 Fed.Appx. 76, 76-77, 2012 WL 116814 at *1 (D.C. Cir. Jan. 10, 2012) (Affirming dismissal of claim for injunctive relief which if successful would have implied the invalidity of the Plaintiff's conviction).

Consequently, where *Heck v. Humphrey* applies, the Court may dismiss the action *sua sponte*. *See, e.g., Johnson v. New York City Police Dept.*, --- Fed. Appx. --- , 2016 WL 3277261 at *1 (2d Cir. Jun. 8, 2016) (Observing that a "*Heck*-barred" claim "must be dismissed," and affirming the district court's *sua sponte* dismissal.);[9] *see also,*

---

[9]To this Court's knowledge, neither the Supreme Court nor the Second Circuit has indicated that the "*Heck* bar" is an affirmative defense which a defendant can waive or forfeit. Rather, the *Heck* rule is described as a procedural bar, and the requirement of dismissal is expressed in mandatory terms. *See, Edwards v. Balisok*, 520 U.S. 641, 649, 117 S. Ct. 1584, 1589 (1997) ("[A] claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed.'). Consequently, although Plaintiff has not argued that Defendants have forfeited the "*Heck* bar defense" due to inaction, the Court is unaware of any binding case authority to support such a argument in any event. *but see, Carr v. O'Leary*, 167 F.3d 1124 (7th Cir. 1999) (Finding that the government defendant had waived the *Heck* "affirmative defense" on dissimilar facts). However, even assuming *arguendo* that the *Heck* bar is an affirmative defense, and that it could be found to have been forfeited on the facts presented here, the Court would nonetheless exercise its discretion to deny the forfeiture argument.

*Shue v. U.S.*, 466 Fed. Appx. 51, 51-52, 2012 WL 1085865 at *1 (2d Cir. Apr. 3, 2012) (Affirming *sua sponte* dismissal of claim pursuant to *Heck*).

In the instant case, Plaintiff tacitly acknowledges that his claims, as pleaded and as supported by his sworn deposition testimony, imply that his conviction for Assault in the Second Degree is invalid.  Indeed, Plaintiff's sworn Complaint [#1] and sworn deposition testimony insist that he is actually innocent.  Nevertheless, Plaintiff argues that success on his claims would not *necessarily* imply the invalidity of his assault conviction, since it is possible either that he might not testify at trial that he was innocent, or that he might testify that he is innocent but the jury might reject his testimony and find that he actually assaulted Defendants, but that they subsequently used excessive force while subduing him.[10]  Plaintiff's argument is not entirely off the mark, since in general, *Heck* does not necessarily bar excessive force claims where the plaintiff was convicted of assaulting officers during the same incident.  For example, *Heck* would not apply if Plaintiff had admitted that he assaulted Attea (or if Plaintiff had said nothing about who initiated the incident), but maintained that Defendants subsequently used excessive force. *See, Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 543-544 (S.D.N.Y. 2005) ("[P]laintiff maintains that his misdemeanor assault conviction is not necessarily invalidated if he prevails on his excessive force claim because if a jury credits his account of what transpired, they could find that he was subjected to excessive force after he assaulted Pfelger and was already compliant. . . .

---

[10]Pl. Memo of Law [#94] at p. 7 ("If one were to imagine that the jury believes that our client did throw the first punch . . . another question is was the force that defendants responded with appropriate.") (referencing transcript of appearance on March 24, 2014, Docket No. [#95-1] at pp. 16-17).

We agree with plaintiff that a jury could reasonably conclude that even though Jeanty assaulted Officer Pfleger, after Jeanty had been subdued, he was subjected to excessive force by the individual defendants.").

Unfortunately for Plaintiff, though, he has pleaded himself out of Court, since it is his version of the facts which the Court must consider when determining whether *Heck* applies, *see, e.g., Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("[I]f he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."), *cert den.* 539 U.S. 910 (2003),[11] and his version of the facts clearly implies, and, in fact, insists upon, the invalidity of his assault conviction. *See, e.g.*, Pl. Deposition at p. 138 ("I am innocent."). Plaintiff's sworn contentions, that he was viciously attacked out of the blue in retaliation for a complaint that he made weeks earlier, and that he never defended himself during the attack, are the basis for all of his claims, as well as his demands for both monetary and injunctive relief.[12] All of Plaintiff's claims thus clearly imply the invalidity of his assault conviction, which has not been set aside, and consequently they are barred by *Heck v. Humphrey*, meaning that such claims have not accrued, and will not accrue, unless and until he succeeds in overturning his conviction.

---

[11]Compare *Prioleau v. Caserta*, No. CV 10-5670 (SJF)(ETB), 2012 WL 5389992 at *7 (E.D.N.Y. Sep. 12, 2012) ("Accepting plaintiff's version of the altercation does not require the factfinder to conclude that plaintiff did not assault the defendants.") (citation omitted), with *Wiggins v. Figueroa*, No. 13-CV-1731 (JS)(SIL), 2015 WL 729730 at *4 (E.D.N.Y. Feb. 18, 2015) ("Plaintiff's version of events are completely irreconcilable with his sworn statements establishing his guilty plea to Assault in the Second Degree.").

[12]Plaintiff's demand for injunctive relief ordering Wende to install video cameras to avoid future assaults only makes sense in the context of his excessive force claim, and therefore the claim for injunctive relief must also be dismissed.

CONCLUSION

For the reasons stated above, Defendants' application [#92] is denied, and this action is dismissed without prejudice pursuant to *Heck v. Humphrey*. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:   Rochester, New York
         July 25, 2016

  /s/ Charles J. Siragusa
 CHARLES J. SIRAGUSA
 United States District Judge