UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER SHAPARD,

                                    Plaintiff,

        -v-                                                      DECISION AND ORDER

JOHN ATTEA, Correction Officer, EDWIN                           08-CV-6146 CJS
MENDEZ, Correction Officer, ROBERT KYLE,
Correction Officer and AL HERDZIK,
Lieutenant,

                                    Defendants.

_____

APPEARANCES

For Plaintiff:          Cameron S. Friedman
                        Luke X. Flynn-Fitzsimmons
                        Noam Lerer
                        Paul, Weiss, Rifkind, Wharton & Garrison
                        1285 Avenue of the Americas
                        New York, New York 10019
                        Auburn, New York 13021


For Defendants:         Gary M. Levine, Esq.
                        Assistant Attorney General of Counsel
                        New York State Office of the Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York 14614


INTRODUCTION

        This was an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison

inmate in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), alleged that Defendants, all employees of DOCCS, used

1

retaliatory excessive force against him, in violation of his federal  constitutional rights.

By Decision and Order filed on July 26, 2016 (Docket No. [#100]), the Court dismissed

the action without prejudice, pursuant to *Heck v. Humphrey*, 512  U.S. 477, 114 S.Ct.

2364 (1994), because Plaintiff's claims, if proven, would clearly imply the invalidity of

his state-court conviction for assault arising from the same incident at issue in this

action.  Now before the Court is Plaintiff's motion for reconsideration [#103].  The

application is denied.

## BACKGROUND

On June 7, 2005, at Wende Correctional Facility ("Wende"), Corrections Officer

Edwin Mendez ("Mendez") and/or Corrections Officer Rober Kyle ("Kyle") used force on

Plaintiff, after they maintain that he attacked Corrections Officer John Attea ("Attea")

without provocation.  In particular, Mendez and/or Kyle struck Plaintiff several times with

a baton, causing at least one laceration to Plaintiff's head that required stitches.  At the

time, Plaintiff was serving an indeterminate sentence of incarceration (twelve-and-a-half

years to twenty-five years) in the State of New York for kidnaping, burglary and robbery,

after which he was scheduled to serve a sixty-year term of imprisonment for a murder

conviction in the State of Connecticut.

Following the incident on June 7, 2005, a Grand Jury in Erie County, New York,

indicted Plaintiff for assaulting Attea.  Specifically, the Grand Jury indicted Plaintiff for

Assault in the Second Degree in violation of New York Penal Law § 120.05(7), which

prohibits the intentional injury of another person while confined in a correctional facility.

At all relevant times Penal Law § 120.05(7) provided:

A person is guilty of assault in the second degree when: . . . (7) Having

2

been charged with or convicted of a crime and while confined in a
correctional facility, as defined in subdivision three of section forty of the
correction law, pursuant to such charge or conviction, with intent to cause
physical injury to another person, he causes such injury to such person or
to a third person[.]

(McKinney's 2016).  On July 16, 2007, in New York State Supreme Court, Erie County,

Plaintiff pled guilty to assaulting Attea, in violation of Penal Law § 120.05(7), and

received a sentence of imprisonment of fifteen years to life.  During Plaintiff's plea

colloquy, he acknowledged not only that he assaulted Attea, but that he initiated the

actions that culminated in his assault on Attea.[1]

On April 2, 2008, Plaintiff commenced this action proceeding *pro se*.  In pertinent

part, Plaintiff alleged that on June 7, 2005, Attea, Mendez and Kyle viciously assaulted

him using punches, kicks and baton strikes.[2]  Plaintiff alleged that defendant

Corrections Lieutenant Al Herdzik ("Herdzik") was not present during the attack, but

"orchestrated" the beating in retaliation for grievances that Plaintiff had filed.  Attached

to Plaintiff's Complaint [#1] is a letter that he purportedly wrote to Wende's

Superintendent, Anthony Zon ("Zon"), on June 7, 2005, immediately following the

assault.  In pertinent part, Plaintiff wrote:

I did not assault or attempt to assault any of the officers.  I was attacked
and this was pure retaliation by C.O. Attea, and, I believe, Lt. Herdzik. . . .
I was assaulted for no other reason than my complaining about your staff.
. . .  No matter what your goons do I refuse to fight back merely because

---

[1]Levine Declaration, Ex. C, Plea Transcript at pp. 10-11.  Plaintiff admits that this current lawsuit involves the same event for which he pled guilty to assaulting Attea. *See*, Pl. Deposition at p. 26 ("I pled guilty to an indictment that charged me with Assault in the Second Degree, that arose from the events of which we are contesting, yes.").

[2]Complaint [#1] at ¶ ¶ 20-27.

3

you assault me.

Complaint [#1-2], Ex. 8  (emphasis in original).  Also attached to the Complaint [#1] is a copy of the transcript from Plaintiff's Tier III disciplinary hearing, at which he testified that Attea, Mendez and Kyle attacked him without provocation, and that he never assaulted any officers:

> I was assaulted by Officer J. Attea, Officer E. Mendez, John Attea, Edwin Mendez and Robert Kyle.  I believe this is a coordinated assault approved and coordinated by Lt. Herdzik.  I believe this was in retaliation for the grievances I have filed against the SHU staff.  I believe that this assault occurred intentionally and willfully and unlawfully[.]  *I did not strike any officer or even attempt to strike any officer, I did not try to kick any officer, I didn't try to do anything that any of these reports alleged me to do[.]*  I was clearly assaulted.
>
> ***
>
> I was assaulted by Officer Attea.  When I got struck by Officer Attea I was tackled from behind by C.O. Mendez.
>
> ***
>
> I never assaulted any officers[.]

Complaint [#1-2], Ex. 11, Disciplinary Hearing Transcript at p. 19, 57-58, 84 (emphasis added).

On March 3, 2010, Defendants deposed Plaintiff at Auburn Correctional Facility ("Auburn").   At the deposition, Plaintiff reiterated that the defendant corrections officers attacked him without provocation, and that he never assaulted them.  For example, Plaintiff testified that he "was on defense the whole time" and that the only thing that he could do was "cover up until this whole event had finished."[3]   Plaintiff further testified that the incident began when Attea punched him in the face "from the blind side"

---

[3]Pl. Deposition at p. 48.

4

without warning, after which Mendez tackled him to the ground, Kyle kicked him in the

face, the officers bent his legs back toward his head, and Kyle or Mendez struck him

with a baton multiple times. [4]  Plaintiff insisted that he never struck any officer:  "I didn't

strike anybody at any time," "[and] that includes Officer Attea."[5]

During the deposition, Plaintiff acknowledged that his claim in this action -- that

he never struck any of the corrections officers including Attea -- contradicts his sworn

plea that he assaulted Attea.  Plaintiff maintained, though, that he lied during his plea

because he wanted to remain incarcerated in New York, rather than be returned to

prison in Connecticut.  On this point, Plaintiff testified, "I am innocent and [when I] pled

guilty . . . I lied."[6]

On or about January 9, 2014, Plaintiff, who had been proceeding *pro se*,

informed the Court that he had retained counsel.  On February 18, 2014, Plaintiff's

newly-retained counsel appeared in the action.  Since that time, Plaintiff's counsel has

moved for various relief, such as re-opening discovery, which the Court has granted.

However, Plaintiff's counsel never moved to amend the Complaint [#1].

On November 13, 2015, Defendants filed a motion [#92] for leave to file a

summary judgment motion beyond the court-ordered deadline, and for summary

judgment pursuant to *Heck v. Humphrey*.   Defendants' motion was replete with legal

argument as to why Plaintiff's claim was barred by *Heck v. Humphrey*.

---

[4]Pl. Deposition at pp. 92-105.

[5]Pl. Deposition at p. 109; *see also, id.* at p. 123 (Reiterating that he never assaulted anyone.); *id.* at p. 126 ("I did not hit CO Atteta to start this thing.").

[6]Pl. Deposition at p. 138.

5

On December 17, 2015, Plaintiff filed a response [#94], which not only opposed Defendants' request for leave to file a summary judgment motion, but also addressed the merits of Defendants' argument pursuant to *Heck v. Humphrey*. Specifically, Plaintiff's response [#94] included argument as to why success on Plaintiff's claim would not necessarily imply the invalidity of his assault conviction. *See, e.g.*, Pl. Memo of Law [#94] at p. 1 ("[G]ood cause aside, Defendants' primary substantive argument -- that Plaintiff's guilty plea for assault arising from this incident precludes him from asserting an excessive force claim -- fails because, as this Court previously recognized, Defendants may have used excessive force regardless of who initiated the incident."); *see also, id.* at pp. 6-7 (Plaintiff's argument for why Defendants' *Heck v. Humphrey* argument lacked merit.).

On July 26, 2016, the Court dismissed this action pursuant to *Heck v. Humphrey*. In that regard, although the Court found that Defendants' legal argument was meritorious, and required the dismissal of Plaintiff's action, it also found that Defendants' motion was untimely. Consequently, the Court proceeded as if it were addressing the legal argument *sua sponte*. As for the applicability of *Heck v. Humphrey*, the Court stated:

> [P]ursuant to *Heck v. Humphrey*, Plaintiff's § 1983 claims cannot accrue unless and until he first succeeds in having his conviction for Assault in the Second Degree set aside. As the Second Circuit has observed, *Heck v. Humphrey*
>
>> precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions. *Heck* requires that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other

6

harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the [challenged] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

*Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (*quoting Heck v. Humphrey*, 512 U.S. at 486-87, 114 S.Ct. at 2364).

Where the "*Heck v. Humphrey* bar" applies, a plaintiff simply has no actionable claim for damages under § 1983.  Rather, such a claim cannot accrue until the Plaintiff obtains relief from the underlying criminal conviction. See, *Poventud v. City of New York*, 750 F.3d  at 130 (Observing that where *Heck v. Humphrey*  applies, the Plaintiff "ha[s] no cause of action under § 1983" because the cause of action does not accrue until the conviction has been set aside.); *see also, U.S. v. Valentine*, 343 Fed. Appx. 723, 724 (2d Cir. Aug. 31, 2009) (A plaintiff "is unable to pursue" a claim barred by *Heck v. Humphrey*); *Morris v. City of Suffolk, Va.*, 70 F.3d 112 (table), 1995 WL 686271 at *1 (4th Cir. Nov. 20, 1995) (A claim barred by *Heck v. Humphrey* is "not yet ripe for a § 1983 action."); *Ballenger v. Owens*, 352 F.3d 842, 846 (4th Cir. 2003) (Observing that in *Heck v. Humphrey*, the Supreme Court "denied the very existence of such a cause of action.");  *Damond v. LeBlanc*, 552 Fed. Appx. 353, 354 (5th Cir. Jan. 16, 2014) (A claim barred by *Heck v. Humphrey* is "not cognizable" and "unripe."); *Plotkin v. U.S.*, 465 Fed. Appx. 828, 831 (11th Cir. Feb. 13, 2012) (A claim barred by *Heck v. Humphrey* "is not ripe and must be dismissed unless the conviction has been invalidated.").

Further, while *Heck* specifically pertains to § 1983 claims for money damages, courts have also held that *Heck* bars claims for injunctive relief that would similarly imply the invalidity of the plaintiff's underlying criminal conviction. *See, e.g., Hamm v. Obama*, 448 Fed.Appx. 76, 76-77, 2012

WL 116814 at *1 (D.C. Cir. Jan. 10, 2012) (Affirming dismissal of claim for injunctive relief which if successful would have implied the invalidity of the Plaintiff's conviction).

Consequently, where *Heck v. Humphrey* applies, the Court may dismiss the action *sua sponte*. *See, e.g., Johnson v. New York City Police Dept.*, --- Fed. Appx. --- , 2016 WL 3277261 at *1 (2d Cir. Jun. 8, 2016) (Observing that a "*Heck*-barred" claim "must be dismissed," and affirming the district court's *sua sponte* dismissal.);[7] *see also, Shue v. U.S.*, 466 Fed. Appx. 51, 51-52, 2012 WL 1085865 at *1 (2d Cir. Apr. 3, 2012) (Affirming *sua sponte* dismissal of claim pursuant to *Heck*).

In the instant case, Plaintiff tacitly acknowledges that his claims, as pleaded and as supported by his sworn deposition testimony, imply that his conviction for Assault in the Second Degree is invalid.  Indeed, Plaintiff's sworn Complaint [#1] and sworn deposition testimony insist that he is actually innocent.  Nevertheless, Plaintiff argues that success on his claims would not *necessarily* imply the invalidity of his assault conviction, since it is possible either that he might not testify at trial that he was innocent, or that he might testify that he is innocent but the jury might reject his testimony and find  that he actually assaulted Defendants, but that they subsequently used excessive force while subduing him.[8] Plaintiff's argument is not entirely off the mark, since in general, *Heck*

---

[7]To this Court's knowledge, neither the Supreme Court nor the Second Circuit has indicated that the "*Heck* bar" is an affirmative defense which a defendant can waive or forfeit.  Rather, the *Heck* rule is described as a procedural bar, and the requirement of dismissal is expressed in mandatory terms. *See, Edwards v. Balisok*, 520 U.S. 641, 649, 117 S. Ct. 1584, 1589 (1997) ("[A] claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed.'). Consequently, although Plaintiff has not argued that Defendants have forfeited the "*Heck* bar defense" due to inaction, the Court is unaware of any binding case authority to support such a argument in any event. *but see, Carr v. O'Leary*, 167 F.3d 1124 (7th Cir. 1999) (Finding that the government defendant had waived the *Heck* "affirmative defense" on dissimilar facts).  However, even assuming *arguendo* that the *Heck* bar is an affirmative defense, and that it could be found to have been forfeited on the facts presented here, the Court would nonetheless exercise its discretion to deny the forfeiture argument.

[8]Pl. Memo of Law [#94] at p. 7 ("If one were to imagine that the jury believes that our client did throw the first punch . . . another question is was the force that defendants responded with appropriate.") (referencing transcript of appearance on March 24, 2014, Docket No. [#95-1] at pp. 16-17).

does not necessarily bar excessive force claims where the plaintiff was convicted of assaulting officers during the same incident.  For example, *Heck* would not apply if Plaintiff had admitted that he assaulted Attea (or if Plaintiff had said nothing about who initiated the incident), but maintained that Defendants subsequently used excessive force. *See, Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 543-544 (S.D.N.Y. 2005) ("[P]laintiff maintains that his misdemeanor assault conviction is not necessarily invalidated if he prevails on his excessive force claim because if a jury credits his account of what transpired, they could find that he was subjected to excessive force after he assaulted Pfelger and was already compliant.  . . .  We agree with plaintiff that a jury could reasonably conclude that even though Jeanty assaulted Officer Pfleger, after Jeanty had been subdued, he was subjected to excessive force by the individual defendants.").

Unfortunately for Plaintiff, though, he has pleaded himself out of Court, since it is his version of the facts which the Court must consider when determining whether *Heck* applies, *see, e.g., Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("[I]f he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."), *cert den.* 539 U.S. 910 (2003),[9]  and his version of the facts clearly implies, and, in fact, insists upon, the invalidity of his assault conviction. *See, e.g.*, Pl. Deposition at p. 138 ("I am innocent.").  Plaintiff's sworn contentions, that he was viciously attacked out of the blue in retaliation for a complaint that he made weeks earlier, and that he never defended himself during the attack, are the basis for all of his claims, as well as his demands for both monetary and injunctive relief.[10]  All of

---

[9]Compare *Prioleau v. Caserta*, No. CV 10-5670 (SJF)(ETB), 2012 WL 5389992 at *7 (E.D.N.Y. Sep. 12, 2012) ("Accepting plaintiff's version of the altercation does not require the factfinder to conclude that plaintiff did not assault the defendants.") (citation omitted), with *Wiggins v. Figueroa*, No. 13-CV-1731 (JS)(SIL), 2015 WL 729730 at *4 (E.D.N.Y. Feb. 18, 2015) ("Plaintiff's version of events are completely irreconcilable with his sworn statements establishing his guilty plea to Assault in the Second Degree.").

[10]Plaintiff's demand for injunctive relief ordering Wende to install video cameras to avoid future assaults only makes sense in the context of his excessive force claim, and therefore the claim for injunctive relief must also be dismissed.

> Plaintiff's claims thus clearly imply the invalidity of his assault conviction,
> which has not been set aside, and consequently they are barred by *Heck*
> *v. Humphrey*, meaning that such claims have not accrued, and will not
> accrue, unless and until he succeeds in overturning his conviction.

Decision and Order [#100] at pp. 8-11.

On August 24, 2016, Plaintiff filed the subject motion for reconsideration, asserting that the Court erred in the following ways: 1) the Court issued its ruling without allowing Plaintiff a sufficient opportunity to be heard; 2) the Court overlooked binding precedent, especially *Griffin v. Crippen*, 193 F.3d 89 (2d Cir. 1999); and 3) the Court erred by dismissing the claims against Mendez and Kyle, since even if *Heck* applies to the claim against Attea, it should not apply to the claims against Mendez and Kyle, since he was never convicted of assaulting them.  Alternatively, Plaintiff requests permission to file an amended complaint.

## STANDARDS OF LAW

"[T]he standard for granting a ... motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

The determination as to whether a particular claim is barred by *Heck v. Humphrey* necessarily turns upon the specific facts alleged by the Plaintiff. *See, Bourdon v. Vacco*, 213 F.3d 625 (table), 2000 WL 637081 at *1 (2d Cir. May 17, 2000) ("The inquiry as to whether a recovery on the § 1983 claim in this case would necessarily imply the invalidity of any conviction is inherently a factual one.") (citing

10

*Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999); internal quotation marks

omitted; applying *Heck*); *see also, Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) ("We

do not doubt that *plaintiff's allegations* of extensive conspiratorial misconduct between

defense counsel and the prosecution *would render the conviction invalid if they were*

*proved*.") (emphasis added; applying *Heck*).

DISCUSSION

<u>Plaintiff Had a Full Opportunity to Brief the Issues</u>

Plaintiff begins by contending that the Court unfairly dismissed the action,

because it "had before it only the Defendants' substantive briefing on the dispositive

issue of whether Shapard's claims . . . violate *Heck*."  That assertion is puzzling at best,

and disingenuous at worst, since as discussed above, Defendants moved for summary

judgment based upon *Heck v. Humphrey*, and Plaintiff addressed the merits of

Defendants' *Heck*  argument in his response.  Therefore, the Court had both sides'

arguments as to the applicability or non-applicability of *Heck* when it issued its ruling.

At most, Plaintiff seems to argue that he was holding back *certain* arguments, while

waiting to see whether the Court would consider Defendants' motion (which was filed

beyond the deadline for such motions).  That is, Plaintiff suggests that he intended to

make a *more complete* argument concerning the merits of Defendants' motion only if

the Court granted Defendants leave to file the late motion.  However, that is a tactical

decision that Plaintiff's counsel made, and further briefing would not have resulted in a

different outcome in any event, as discussed further below.

Furthermore, while the Court indicated that it was dismissing the action *sua*

11

*sponte*, this is clearly not the typical *sua sponte* situation.  Rather, Defendants brought

the *Heck v. Humphrey* issue to the Court's attention in their motion, and Plaintiff had

both notice and an opportunity to respond.  The only reason the Court treated its ruling

as *sua sponte* was because it could not find that Defendants had acted diligently in

bringing the motion.  Nevertheless, the *Heck* issue was already before the Court and

needed to be ruled upon as explained in the Court's Decision and Order.  In any event,

the fact that the Court described its prior ruling as "*sua sponte*" is irrelevant at this point,

since even considering the additional briefing that Plaintiff submitted in connection with

this application for reconsideration, his arguments lack merit.

<u>The Court Did Not Overlook Controlling Decisions</u>

Plaintiff's next argument, that the Court overlooked case authority supporting his

claim, also lacks merit.  Plaintiff's primary argument on this point is that the Court did

not discuss *Griffin v. Crippen*, 193 F.3d 89 (2d Cir. 1999) ("*Griffin*").  However, *Griffin*

did not involve *Heck v. Humphrey*.  Rather, *Griffin* involved a case where the district

court *sua sponte* dismissed an inmate plaintiff's excessive force claim against two

corrections officers, in part because the inmate had previously pled guilty to assaulting

the same two officers.  The district court dismissed the action, finding that, because the

inmate had pleaded guilty to assaulting the officers (and because his alleged injuries

were not serious) no reasonable jury could find an 8th Amendment violation.  However,

the Second Circuit reversed, stating in pertinent part: "The assault charges to which

appellant pled guilty certainly cast doubt on his claim.  They do not, however, preclude

a reasonable jury from finding that excessive force was used against him on the day in

question." *Griffin v. Crippen*, 193 F.3d at 92.  Thus *Griffin* is not about *Heck v. Humphrey*, but is about the summary judgment standard.  Plaintiff nevertheless argues that "[c]ourts commonly apply *Griffin* in holding that a guilty plea does not require dismissal of excessive force claims under *Heck*."[11]

However, the Court does not agree that *Griffin* requires that Plaintiff's motion for reconsideration be granted.  To begin with, insofar as *Griffin* is applicable to this case at all, it stands for the proposition that an excessive force claim does not necessarily imply the invalidity of an assault conviction arising from the same incident.  However, this Court acknowledged that very same point in its prior Decision and Order when it stated:

> [I]n general, *Heck* does not necessarily  bar excessive force claims where the plaintiff was convicted of assaulting officers during the same incident.

Decision and Order [#100] at p. 10.  Moreover, as this Court further observed, the Plaintiff in this action went far beyond merely pleading an excessive force claim – he claimed as part and parcel of his underlying claims in the Complaint [#1] that he was actually innocent, and that he had never assaulted the corrections officers, and that instead, defendants had orchestrated the entire incident in order to retaliate against him.  Plaintiff repeated those assertions in detail under oath at his deposition, and further asserted that he had lied when he pleaded guilty to assaulting Attea.

These facts alone distinguish *Griffin v. Crippen*.  In *Griffin*, there is no indication that the inmate maintained, as part of his underlying claim, that he was actually innocent of the assault charge for which he had been convicted. *See, Griffin v. Crippen*,

_____

[11]Pl. Memo of Law [#104] at p. 2.

193 F.3d at 90 (Summarizing Griffin's claim, without mentioning any claim of actual innocence); *see also*, Appellees' Brief, 1999 WL 33607638 at *2 (summarizing Griffin's claim, without mentioning a claim of innocence).  Rather, in *Griffin*, the inmate plaintiff apparently only asserted that he was innocent in response to questioning by the court during a pretrial hearing. *See, Griffin*, 193 F.3d at 90-91; *see also*, Appellees' Brief, 1999 WL 33607638 at *2.   Moreover, the inmate plaintiff in *Griffin* claimed that he was assaulted *after* he was already handcuffed. *Griffin*, 193 F.3d at 90-91.

The instant case is significantly different, because Plaintiff's entire claim flows from his claim of actual innocence:  He claims that he did nothing whatsoever to warrant any use of force by the Defendants, that they attacked him without warning as retaliation for grievances that he had filed, and that he did not defend himself even though they were beating him.  Plaintiff has repeatedly made this claim in his Complaint [#1], his sworn disciplinary hearing testimony and his sworn deposition testimony, and it is utterly incompatible with his conviction for assaulting Attea.  That is, if Plaintiff's claim is proven at trial, it will necessarily imply the invalidity of his conviction for assault.

Plaintiff, however, insists that his "claim" is whatever a jury might ultimately conclude.  In sum, Plaintiff contends that it does not matter that his entire lawsuit has been premised on his claim of innocence, because a jury could disbelieve that aspect of his claim and still conclude that he suffered excessive force, in which case his "claim" would not imply the invalidity of his conviction.  In effect, under Plaintiff's view, a *Heck v. Humphrey* dismissal would never be appropriate in a case with both an assault conviction and an excessive force claim, since, without being burdened by the Plaintiff's

14

factual allegations, one could always imagine a scenario under which a jury could conclude that excessive force was used despite the fact that a plaintiff had been convicted of assault.  In this regard, Plaintiff is essentially arguing for a *categorical* rule under which excessive force/assault conviction claims would be excluded from *Heck v. Humphrey*'s reach.[12]  However, such argument contradicts the Second Circuit's instruction that *Heck* claims must be analyzed on their particular facts.

Consistent with the Second Circuit's view, when faced with similar facts many courts, including the Seventh and Fifth Circuit Courts of Appeals, have found that the plaintiff's "claim" for purposes of *Heck v. Humphrey* analysis is the version of facts which the Plaintiff has put forth in support of his claim.  On this point, the Court cited *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) in its Decision and Order [#100] dismissing this action.  In *Okoro*, a man who had been convicted of selling drugs to undercover officers alleged, in a subsequent civil lawsuit, that he had not sold drugs to the officers, but instead had attempted to sell jewels to the officers, when the officers stole.  The Circuit Panel found that the claim was barred by *Heck v. Humphrey*, since while it was theoretically possible that the plaintiff could have both sold drugs to the officers and had gems stolen by the officers, the plaintiff was asserting as part of his claim that he never sold drugs to the officers.  On this point the Court stated:

---

[12]Plaintiff suggests that *Heck* would only apply if he had been convicted of Penal Law § 120.05(3) (assaulting an officer with the intent to prevent the officer from performing a lawful duty) as opposed to Penal Law § 120.05(7) (assault with intent to cause injury while confined in a correctional facility).  *See*, Pl. Memo of Law [#104] at p. 2 ("[T]he difference between subsections 3 and 7 for purposes of *Heck* is critical.").  The idea for such a distinction is that an officer cannot simultaneously be performing a lawful duty and committing an assault.  The Court understands that some courts have made this distinction, but does not find the rationale convincing.  For example, the fact that an inmate assaulted an officer to prevent the officer from performing a lawful duty would not necessarily be inconsistent with a claim that the same officer subsequently used excessive force against the inmate while terminating the assault.

The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that a convicted criminal may not bring a civil suit questioning the validity of his conviction until he has gotten the conviction set aside. Okoro could be guilty of drug violations yet also have been the victim of a theft by the officers who arrested him. But we noted in our previous opinion that from the outset he has insisted that he was not trying to sell the officers heroin, as they testified; he was trying to sell them gems and they stole them. If this is true, then almost certainly he was convicted in error[.]

***

[The District Court] rejected [the defendant's *Heck v. Humphrey* argument] because of the theoretical possibility [of a jury finding] that the defendants had both found illegal drugs in Okoro's home and stolen gems and cash that they also found there.  This was error.  Okoro adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute or its federal-defendant equivalent, 28 U.S.C. § 2255. It is irrelevant that he disclaims any intention of challenging his conviction; <u>if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.</u>  He is the master of his ground. He could argue . . . that the defendants had taken both drugs and gems, and then the fact that they had violated his civil rights in taking the gems (if they did take them) would cast no cloud over the conviction. Or he could simply argue that they took the gems and not say anything about the drugs, and then he wouldn't be actually challenging the validity of the guilty verdict. But since he is challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed, he is barred by *Heck*.

*Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (citations omitted), *cert den.* 539 U.S. 910 (2003).

This same issue arose in *Tolliver v. City of Chicago*, 820 F.3d 237 (2016) ("*Tolliver*") in which, after pleading guilty to aggravated battery of a police officer, a man filed an excessive force claim against the same officer, claiming that he had never

assaulted the officer.  The Court found that while it was theoretically possible for an assault conviction and excessive force claim to coexist without implying the invalidity of the conviction, the version of facts put forward by the plaintiff resulted in the excessive force claim being barred by *Heck v. Humphrey*:

> Although it is certainly possible in the abstract for a claim of excessive force to survive *Heck*, Tolliver's suit rests on a version of the event that completely negates the basis for his conviction. His claim is therefore barred by *Heck* and we affirm.

> The facts are hotly disputed but we must credit Tolliver's version[.]  . . .  Tolliver[, who was shot by the police,] asserts that before the shooting and at the time of the shooting, he posed no danger or threat of danger to either officer.  . . .  Nevertheless, he pled guilty to state charges of aggravated battery of a police officer[.]
> ***
> Under Tolliver's theory of the case, the officers used excessive force in shooting him before his car began moving and in continuing to shoot him as his car rolled slowly in the direction of [Officer] Sobieraj.
> ***
> In Tolliver's current version of the shooting, he concedes that he knew that Sobieraj was a peace officer performing his duties and that Sobieraj was injured when he attempted to move away from Tolliver's car as it rolled towards him. But Tolliver's version of the event denies any act that was knowing, intentional, voluntary and lacking legal justification that caused the harm to Officer Sobieraj. Instead, Tolliver affirmatively asserts that he did not intentionally drive the car towards the officers, and that after the first, unprovoked shot, he was paralyzed, fell over, and could not see what was happening.  . . .  Without any acknowledgment of the mental state necessary for a conviction for aggravated battery, Tolliver's version of the shooting thus implies the invalidity of his conviction. That is, if the finder of fact were to accept his version of the event, the officers shot him as he sat impassively in his car, posing no threat to the officers.  . . .  Under Tolliver's version of the facts, he could not be guilty of aggravated battery because he did not intentionally drive towards the officers, did not knowingly roll towards them, could not have stopped the car if he wanted

17

to, and placed the car into a forward gear through an act that can be described as voluntary only if the finder of fact ignores the majority of his deposition testimony.

\*\*\*

We [again] note that there is nothing inherently contradictory about pleading guilty to aggravated battery of a peace officer and bringing a claim of excessive force.  . . .  But if the incident unfolded as Tolliver alleges in his civil suit, then he could not have been guilty of aggravated battery of a peace officer[.]  . . .  Because Tolliver is the master of his ground, and because the allegations he makes now necessarily imply the invalidity of his conviction, *Heck* bars his civil suit.

*Tolliver v. City of Chicago*, 820 F.3d 237, 239, 240-241, 242–43, 244 (7th Cir. 2016).

The Fifth Circuit engaged in a similar discussion in *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007) ("*DeLeon*").  In *DeLeon*, a man who had been convicted of assaulting a police officer subsequently filed a civil lawsuit against the same officer, alleging excessive force.  The Circuit Panel held that while the plaintiff's conviction for assaulting an officer was theoretically compatible with a claim for excessive force against the same officer, *Heck* nevertheless barred the plaintiff's claim because of the particular version of facts that he put forward:

Contrary to DeLeon's argument on appeal, his complaint does not allege that his claims of excessive force are separable from his aggravated assault on the officer. Instead, the complaint maintains that he did nothing wrong, that he simply defended himself, against mace, baton, and then gun, as the violence escalated. The complaint alleges that while DeLeon "explained that everything was fine," [Officer] Collins refused to listen and "instead unleashed his chemical spray on Mr. DeLeon." As DeLeon "was trying to fend off the blinding mace, Defendant Collins then pulled out his baton and began swinging at Mr. DeLeon." Finally, when DeLeon put his hand up in defense, "holding on" to the baton, Collins "got even angrier." Eventually, DeLeon "released Collins and backed away from him with his hands up ... Mr. DeLeon barely had time to query 'are you going to shoot

18

me?' before Collins did just that."

> [On these facts t]here is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding against DeLeon for aggravated assault on an officer. Rather it is presented as a single violent encounter throughout which Collins used excessive force. DeLeon's complaint alleges that [he] . . . "committed no crime."

***

> DeLeon still thinks he's innocent. His federal complaint contradicts his confession in Texas court, belying any suggestion on appeal that he has accepted his "conviction" for aggravated assault, and challenges only the shooting. As we reasoned in a recent unpublished opinion:

>> Arnold's claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, Arnold claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery .... Arnold's claims are distinguishable from excessive force claims that survive *Heck*'s bar .... Arnold's suit squarely challenges the factual determination that underlies his conviction for resisting an officer. If Arnold prevails, he will have established that his criminal conviction lacks any basis.

> We conclude that DeLeon's excessive force claims are inseparable from the rest.

*DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007) (footnote omitted).

Other courts have similarly found that plaintiffs have pleaded themselves out of court pursuant to *Heck* by setting forth versions of facts that are incompatible with their underlying criminal convictions.  For example, in *Shaw v. Terrill*, No. 1:13-cv-00129-MP-GRJ, 2014 WL 1775616 (N.D. Fl. May 1, 2014),  an inmate plaintiff, who had been

convicted of assaulting a corrections officer during a particular incident, subsequently filed a § 1983 complaint alleging that the same officer had used excessive force against him during the incident.  In finding that the excessive force claim was barred by *Heck v. Humphrey*, the court stated:

> In considering whether a § 1983 claim is *Heck*-barred, the Court must determine whether a plaintiff's factual allegations, if proven, would necessarily undermine the validity of the plaintiff's conviction. *See Edwards v. Balisok*, 520 U.S. 642, 646–48 (1997). If the factual basis of the plaintiff's civil case is "inconsistent with [his] conviction's having been valid, Heck kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir.2003). This Court has previously noted:

> > It of course is possible for an excessive-force action and a battery conviction to coexist without running afoul of *Heck*. When, for example, a plaintiff admits that he hit a law enforcement officer but asserts that the officer responded with excessive force, there is no *Heck* problem-a finding that the officer employed excessive force would not impugn the plaintiff's battery conviction. But when the theory of the plaintiff's excessive-force case is that he never hit the officer and that the officer attacked him without provocation, the plaintiff, in effect, is mounting a collateral attack on his battery conviction, which *Heck* does not allow.

> *Harvey v. Teal*, Case No. 5:08–cv–339–RH–AK, 2010 WL 427434, at \*2 (N.D.Fla.2010) (citing *Dyer v. Lee*, 488 F.3d 876, 882–84 (11th Cir.2007); *Smith v. Towery*, 79 F.3d 951,952–53 (9th Cir.1996); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir.2006).

> The instant case is similar to *Harvey*, where the Plaintiff's theory of his excessive-force claim (which came after his conviction for aggravated battery on a corrections officer) was that he never hit the officer and was attacked without provocation. The Court concluded in *Harvey* that the plaintiff's version of events wherein he did not hit the officer would in fact imply the validity of his conviction, and therefore *Heck* did bar his claims.

> *Harvey*, 2010 WL 42734, at \*3. Similarly, here, Plaintiff does not allege
> that he battered Defendant Terrill and thereafter Defendant Terrill
> unreasonably used excessive force. Rather, Plaintiff alleges that the
> excessive force was entirely unprovoked. Accordingly, Plaintiff has
> "voluntarily steered [his case] into *Heck* territory by making specific factual
> allegations in the complaint that were inconsistent with the facts upon
> which is criminal conviction ... was based." *Hayward v. Kile*, 2009 WL
> 2045923, at \*1 (S.D.Ga.2009); *see also LaFlower v. Kinard*, 2011 WL
> 2183555, at \*3 (M.D.Fla.2011) (finding excessive-force claim barred by
> *Heck* where the "Plaintiff's basis for this action is wholly inconsistent with
> the facts up on which the disciplinary conviction is based" and a judgment
> in favor of Plaintiff finding that the attack was without provocation would
> necessarily imply the validity of the conviction).
>
> Accordingly, because Plaintiff alleges that the excessive force was
> unprovoked and his version of the facts, if proven true, would necessarily
> imply the invalidity of his conviction, his suit is barred by *Heck*.
> Furthermore, because his remaining claims of failure to protect or
> intervene claims hinge on his claims of excessive force, especially against
> Defendant Terrill, his case is due to be dismissed in its entirety.

*Shaw v. Terrill*, 2014 WL 1775616, at \*3–4; *see also, Ortega v. Mattocks*, No. 13-cv-06016-JSC, 2014 WL 7275372 (N.D. Cal. Dec. 22, 2014) ("On the record before the Court, the *Heck* bar applies. Under Plaintiff's version of events, which must be accepted as true and viewed in a light most favorable to him at this stage . . .  he did not provide any resistance to the officers.   . . .  If Plaintiff proves his claim of excessive force, which is premised on his sworn testimony that he did not resist, obstruct or delay Mattocks or the other officers in carrying out his arrest, it would necessarily imply the invalidity of his conviction for engaging in such resistance under California Penal Code § 148(a).").

    In the instant case, Plaintiff's version of facts, which he has repeatedly made under oath, is clearly incompatible with his conviction for assault, and amounts to a

collateral attack on the conviction.  The claim is therefore barred by *Heck*.  The Court does not agree with Plaintiff's contention that when considering the applicability of *Heck v. Humphrey*, it is required to ignore the factual allegations of his claim and consider only whether a jury could theoretically return a verdict in his favor based upon some other set of facts.  To the extent that Plaintiff belatedly requests permission to amend his claim, the application is denied based on undue delay and lack of diligence.

### *Heck* Bars the Claims Against All Three Defendants

Lastly, Plaintiff contends that even if *Heck* bars his claim against Attea, it should not also bar his claims against Mendez and Kyle, since he was never convicted of assaulting them.  However, the Court disagrees and finds that his version of facts as set forth above alleges a single continuous event involving all three defendants.  Specifically, Plaintiff maintains that Attea, Mendez and Kyle simultaneously attacked him as part of a planned act of retaliation.  To paraphrase the Fifth Circuit's discussion in *DeLeon*, above, "there is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the [New York] proceeding against [Plaintiff] for . . . assault on an officer. Rather it is presented as a single violent encounter throughout which [the defendants simultaneously] used excessive force."  Accordingly, since Plaintiff insists that he never assaulted anyone during the incident and never resisted the officers' force, a verdict against Mendez or Kyle would similarly imply the invalidity of Plaintiff's conviction for assaulting Attea. *See, e.g., Tolliver*, 820 F.3d at 241-244 (Although Tolliver was only convicted of assaulting one officer, his excessive force claims against the other officers involved in his arrest

22

were also barred by *Heck* since they were all based on the same set of facts).

CONCLUSION

For the reasons stated above, Defendants' application for reconsideration [#103] is denied. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.


Dated:       Rochester, New York
             October 7, 2016

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge